Gary Dean DOYLE, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–246.

Supreme Court of Wyoming.

Feb. 26, 1998.

Rehearing Denied April 21, 1998.

Sylvia Hackl, State Public Defender; Donna D. Domonkos, Assistant Appellate Counsel (argued); and Scott P. Klosterman, Special Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Hugh Kenny, Senior Assistant Attorney General (argued), for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Gary Dean Doyle appeals the Judgment and Sentence entered for his conviction of grand larceny in violation of W.S. 6–3–402(a) and (c)(i) (1997). We affirm.

## ISSUES

Doyle presents these issues:

I. Were the incriminating statements made by the Appellant to Officer Broz while in custody and without being read his *Miranda* rights voluntary under the totality of the circumstances?

II. Was the arrest of Appellant unlawful because the affidavit supporting the arrest warrant was false and misleading and signed by a judge who was not neutral and detached?

III. Was the Appellant denied his right to a speedy trial as guaranteed by the Sixth Amendment of the United States Constitution and Article 1 Section 10 of the Wyoming Constitution?

The State responds:

1. Was Appellant's incriminating statement a product of interrogation and thus subject to suppression under *Miranda?*

2. Was Appellant's arrest lawful? Did Appellant waive any irregularities relating to his arrest by his failure to object prior to trial?

3. Was Appellant denied his right to a speedy trial on the facts as disclosed by the record in this case?

## FACTS

Doyle had lived and worked on the Dumbell Ranch near Casper for about eleven days in September 1994 when the owners of the ranch had to leave to seek medical attention. Shortly thereafter, approximately $15,000 worth of saddles, tack and tools were discovered missing from the barn and stables, and Doyle had disappeared. Officer Jim Broz investigated the theft and placed a notice in a regional law enforcement agency bulletin requesting assistance in locating Doyle. In March of 1995, the Lincoln County, Colorado Detention Center contacted Broz and advised him that Doyle was in custody on forgery charges.

On March 30, 1995, Broz went to the detention center to interview Doyle. Upon Broz's arrival, Doyle was escorted to the interview room. While still standing in the hall at the interview room doorway, Broz and Doyle had a brief interaction. Broz then called the Natrona County authorities; and, based on the information Doyle conveyed to Broz, the district attorney's office filed a complaint and obtained an arrest warrant that same day. The arrest warrant was executed November 1, 1995.

Doyle was arraigned on December 15, 1995, and pled not guilty. Doyle filed a motion to suppress the statements made during the March 30 contact between Doyle and Broz. The court, after a hearing, denied Doyle's motion. The district court held a jury trial on the grand larceny charge on February 12 and 13, 1996, and the jury found Doyle guilty.

Sentencing was set for June 6, 1996. The day before sentencing, Doyle moved to vacate the judgment based on speedy trial grounds and upon allegations going to the validity of the arrest warrant. Doyle also moved for reconsideration of his previously denied motion for a new trial. Doyle had requested a new trial based primarily on his contention that certain trial testimony conflicted with testimony presented at the suppression hearing and demonstrated that his motion to suppress should have been granted. At Doyle's sentencing hearing, the court denied Doyle's motions, then sentenced Doyle to not less than eight years nor more than ten years to run consecutively to the sentence he was currently serving in Colorado for forgery. This timely appeal followed.

## DISCUSSION

### I. Motion to Suppress

The Fifth and Fourteenth Amendments to the United States Constitution and

article 1, sections 6 and 11 of the Wyoming Constitution require confessions, admissions and statements to be voluntary. *Simmers v. State,* 943 P.2d 1189, 1195 (Wyo.1997). "A statement that is not the product of interrogation or compulsion attributable to authorities or some other improper action is voluntary and admissible." *Ramos v. State,* 806 P.2d 822, 828 (Wyo.1991) (quoting *Griffin v. State,* 749 P.2d 246, 254 (Wyo.1988)). Doyle claims his incriminating statements to Broz were not voluntarily made and, therefore, should have been suppressed. He challenges the admission of his statements on two grounds. First, he contends the statements were the product of a custodial interrogation and he was not advised of his *Miranda* rights. Second, he argues his confession was violative of due process because it was the product of police coercion and deception.

We review de novo a district court's ruling on a motion to suppress for involuntariness. *Simmers,* 943 P.2d at 1194 (citing *State v. Evans,* 944 P.2d 1120 (Wyo.1997)). We will not disturb a district court's findings on the factual issues of a motion to suppress unless the findings are clearly erroneous. *Simmers,* at 1194. Because the trial court has the opportunity to assess the witnesses' credibility, to weigh the evidence, and to make the necessary inferences, deductions and conclusions, we view the evidence in the light most favorable to the district court's determination. *Id.*

We turn first to Doyle's *Miranda* argument. Statements elicited during a custodial interrogation are inadmissible unless the accused has been advised of his *Miranda* rights. *Kolb v. State,* 930 P.2d 1238, 1243 (Wyo.1996). In the case at bar, the State does not dispute the fact that Doyle was in custody when he made the incriminating statements or that Broz did not inform Doyle of his *Miranda* rights. The pivotal determination, therefore, is whether the encounter between Broz and Doyle amounted to an interrogation.

In *Rhode Island v. Innis,* the United States Supreme Court defined the term "interrogation" for constitutional purposes. 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *see also Daniel v. State,*

644 P.2d 172, 176 (Wyo.1982). The Court recognized that the term "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Daniel,* 644 P.2d at 176 (quoting *Rhode Island v. Innis,* 446 U.S. at 300, 100 S.Ct. at 1689). The Court then concluded that

the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. * * * [I]nterrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily on the perceptions of the suspect, rather than the intent of the police.

*Daniel,* at 176 (quoting *Innis,* 446 U.S. at 300–01, 100 S.Ct. at 1689–90).

At the suppression hearing, Officer Broz offered the following testimony on cross examination:

A [Broz]: * * * I introduced myself. I told him who I was, where I was employed.

I told him that I was here to talk to him about the Dumbell Ranch, the property that was missing from that ranch—well, I said the property that he had taken from the ranch, and when and if we could recover that property.

Q: Did you—was that a question you had asked him, or was that a statement you told him?

A: No. I told him why I was there. There were no questions, no interrogatives.

Q: At the end of that statement, what did Mr. Doyle say, or how did he react?

A: Mr. Doyle's first answer to me was, he said, "The stuff I took from that ranch I sold at a flee [sic] market on Indian School Road, in Phoenix, Arizona."

On redirect, Officer Broz further described the exchange:

* * * It wasn't one continuous statement. As soon as I told him who I was, where I

was from, what I needed to talk to him about, he told me—his first words to me were that he had taken the stuff from the Dumbell Ranch to a flee [sic] market on Indian School Road in Phoenix, and sold it.

He continued, at that point uninterrupted, with the fact that he was drunk or on a drunken binge and drunk most of the time he was at the Dumbell Ranch, and that he doesn't remember where all the stuff is. And he says, "You're not going to be able to find it anyway."

At the close of the suppression hearing, the district court denied Doyle's motion to suppress, finding that "the statements made by the defendant were made voluntarily, and were not the product of interrogation by the officer, as the defendant made the statements without being questioned and before the conversation had reached a point where the officer would have advised him of his rights."

■ The question is whether Broz should have known his remarks would elicit an incriminating response. Viewing the evidence in the light most favorable to the district court's determination, the court's finding was not clearly erroneous. Broz merely introduced himself to Doyle and stated his purpose for being there. The exchange took place before Broz and Doyle even entered the interview room and lasted, at most, two to three minutes. Broz testified he did not expressly question Doyle, and we do not view his remarks as the functional equivalent of express questioning. Broz's introduction does not appear designed to elicit any response, much less an incriminating one. The fact that Doyle spontaneously responded to Broz's introduction with incriminating statements does not render the statements inadmissible. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [*Miranda*]." *Bland v. State*, 803 P.2d 856, 860 (Wyo.1990) (quoting *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966)).

Doyle thrice renewed his motion to suppress his statements to Broz, once during trial, once at the close of the evidence, and again in a post-trial motion for reconsidera-

tion. The district court stood by its earlier ruling with no further elaboration. Broz's testimony at trial was essentially the same as his testimony at the suppression hearing. However, Doyle contends that testimony given at trial by Officer Beverley Raines, who witnessed the encounter between Broz and Doyle, contradicted Broz's testimony and demonstrated that Broz's statements amounted to an interrogation.

Raines' account of what happened did not vary substantially from Broz's account. She confirmed that the encounter took place outside the interview room and lasted only a couple of minutes. With respect to whether Broz questioned Doyle, Raines' testimony was equivocal:

A [Raines]: * * * Mr. Broz advised Mr. Doyle who he was, and he told him he was from Natrona County.

\* \* \* \* \*

Q: Relate again for me, if you will, Ms. Raines, the conversation you overheard.

\* \* \* \* \*

A: Mr. Doyle again acknowledged who he was. Officer Broz asked him what he had done with the stuff he had taken from the Dumbell Ranch. And Mr. Doyle then said that he had taken it and sold it in Phoenix.

\* \* \* \* \*

Q: Okay. Did Officer Broz ask the defendant any questions, or did he just generally make a statement?

A: He generally made a statement.

Q: Okay. And the defendant reacted to that statement?

A: He did. And he was very civil about it.

■ Raines testified that Broz "asked" Doyle what he had done, and later said he made a "statement." To the extent Raines' testimony contradicted Broz's testimony, resolution of that conflict was within the province of the district court. *Garcia v. State*, 777 P.2d 603, 606 (Wyo.1989). The court had the opportunity to hear and observe the witnesses, assess their credibility and determine the weight to be given to their testimony. *Bravo v. State*, 897 P.2d 1303, 1305 (Wyo. 1995). The court did not err when it denied

Doyle's trial and post-trial motions for reconsideration of his motion to suppress based on Raines' testimony.

 Doyle's due process argument is also without merit. Doyle correctly states that the due process clause stands as an independent limitation on the use of a defendant's pretrial statement. "A confession may be found involuntary because of the means used to obtain it." *Simmers*, 943 P.2d at 1195. Doyle asserts that Broz's remarks were coercive and deceptive because Broz suggested he knew Doyle had stolen the property when he in fact had no evidence to link Doyle to the crime. He also maintains that because he was not informed of his *Miranda* rights, he did not make the incriminating statements with a full awareness of the nature of his rights and the consequences of abandoning those rights.[1] Because the due process argument is raised for the first time on appeal, we apply a plain error standard of review:

> First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.

*Sanchez v. State*, 751 P.2d 1300, 1304 (Wyo. 1988) (citations omitted).

The record clearly presents the incident Doyle claims as error: Broz testified that he told Doyle he was there to ask him about the property he took and find out when and if it could be recovered and, further, that he did not advise Doyle of his *Miranda* rights. However, Doyle has not demonstrated violation of a clear and unequivocal rule of law in a clear and obvious way.

 The voluntariness of an accused's statements is determined by examining the totality of the circumstances. *Simmers*, 943 P.2d at 1195. In *Simmers*, we delineated

several factors that courts might consider under the totality of the circumstances. *Id.* at 1195–96. Whether a defendant has been informed of his rights under *Miranda* is one factor, as is whether the challenged statement was volunteered. We have already determined that because Broz's introductory remarks to Doyle did not amount to an interrogation, *Miranda* warnings were not required. Additionally, the record demonstrates that the encounter between Broz and Doyle was civil, not adversarial. The two were standing in a hallway outside an interview room, and the exchange lasted two to three minutes at most. There is no suggestion that Broz used violence, threats, promises, improper influence, or engaged in official misconduct. Finally, there was nothing deceptive in Broz's identification of the purpose of his visit; circumstantial evidence linked Doyle to the crime, and Doyle was the only suspect. Given the totality of the circumstances in this case, Doyle has failed to demonstrate that his statement was not voluntarily made. He, therefore, has not demonstrated a clear and obvious violation of a clearly established rule of law. We conclude that the denial of Doyle's motion to suppress did not amount to plain error.

## II. Objections Based on Defects in the Institution of Prosecution

 Doyle asserts that he was unlawfully arrested because the affidavit supporting the arrest warrant contained false information and the judge who signed the warrant was not neutral. Doyle did not raise these objections, however, until he moved to vacate the judgment against him. Wyoming Rule of Criminal Procedure 12 specifically provides that a defendant waives such objections if he does not bring them prior to trial:

> (b) *Pretrial motions.*—Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the

---

1. Doyle erroneously frames his argument in terms of the two-part test we use to analyze whether a defendant has voluntarily waived *Miranda* warnings. It is undisputed that *Miranda* warnings were not given in this case and, therefore, waiver is not an issue. However, whether examining the voluntariness of a confession or the voluntariness of a waiver, we do look for evidence of police coercion and deception. *See, e.g., State v. Evans*, 944 P.2d 1120, 1125 (Wyo. 1997) (confession); *Frias v. State*, 722 P.2d 135, 141–42 (Wyo.1986) (waiver).

discretion of the judge. *The following must be raised prior to trial:*

> *(1) Defenses and objections based on defects in the institution of the prosecution;*

> \* \* \* \* \*

> (g) *Effect of failure to raise defenses or objections, or to make requests.—Failure by a party to raise defenses or objections* or to make requests *which must be made prior to trial,* at the time set by the court pursuant to subsection (d), or prior to any extension thereof made by the court, *shall constitute waiver thereof,* but the court for cause shown may grant relief from the waiver.

(Emphasis added.) Doyle's objections to the affidavit supporting the arrest warrant are "objections based on defects in the institution of the prosecution," and thus his failure to timely object constitutes a waiver. *Accord United States v. Kahl,* 583 F.2d 1351, 1356 (5th Cir.1978) (under Federal Rules of Criminal Procedure 12(b)(1), the defendant's failure to raise objections to the validity of a warrant prior to trial constituted a waiver of the objection).

■■■ We have held that where an appellant attacks the validity of a warrant on appeal, but offered no motion prior to trial, we will review appellant's claim under a plain error standard. *See Lobatos v. State,* 875 P.2d 716, 721 (Wyo.1994). *Also, see generally Bradley v. State,* 635 P.2d 1161, 1163–64 (Wyo.1981) (a failure to object constitutes a waiver to whatever error occurred, unless the error rises to the level of plain error). In order for us to enter into a plain error analysis, however, the record must indicate what occurred without speculation. *Madrid v. State,* 910 P.2d 1340, 1345 (Wyo.1996). In cases such as this, where the appellant has failed to timely raise objections, has not argued plain error, and has not supported his allegations with the record, we decline to consider the issue further. *See e.g., Billis v. State,* 800 P.2d 401, 433–34 (Wyo.1990).

### III. Speedy Trial

■■■ Doyle's final argument is that his right to speedy trial was violated because 349 days passed from his arrest to the start of his trial and because the Natrona County sheriff's office delayed transporting him to Wyoming, despite the fact that he immediately waived extradition. Both the Sixth Amendment to the United States Constitution and article 1, section 10 of the Wyoming Constitution guarantee a defendant the right to a speedy trial. In determining whether an appellant's right to speedy trial has been violated, we are guided by the four-part test set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and adopted by this court in *Cosco v. State,* 503 P.2d 1403, 1405 (Wyo.1972). This test requires us to balance 1) the length of delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. *Yung v. State,* 906 P.2d 1028, 1032 (Wyo.1995); *Roderick v. State,* 858 P.2d 538, 542 (Wyo.1993); *Osborne v. State,* 806 P.2d 272, 277 (Wyo.1991).

■■■ Doyle's argument contains assertions that are unsupported by or contradictory to the record. Doyle claims he was arrested on March 30, 1995, but the arrest warrant was not executed until November 1, 1995. His arraignment took place on December 15, 1995, and the trial began on February 12, 1996. Thus, the record reflects that 103 days passed from the date of arrest to the date of trial, and 59 days passed from the date of arraignment to the date of trial. Wyoming Rule of Criminal Procedure 48 requires that criminal charges be brought to trial within 120 days following arraignment. Compliance with the time frame established in the rule, as here, is a strong indication that no speedy trial violation has occurred. *See Hogan v. State,* 908 P.2d 925, 930–31 (Wyo.1995).

■■■ Doyle then asserts that because he immediately waived extradition, Wyoming authorities had no good reason to delay bringing him to Wyoming. The record contains absolutely no evidentiary support for Doyle's allegation that he immediately waived extradition. We will not presume allegations that are unsupported by the record. *Madrid v. State,* 910 P.2d 1340, 1343 (Wyo.1996). The record does not reflect any reason for the delay, let alone any reason

that could be attributed to the prosecution. According to the record, when Broz spoke to Doyle on March 30, Doyle had been arrested on forgery charges in Colorado. The judgment and sentence entered in this case implicitly recognized that at some point Doyle was convicted on the forgery charge by its provision that Doyle's Wyoming sentence was "to run consecutively to the sentence the Defendant is presently serving for the charge of Forgery in the State of Colorado." The record is otherwise silent regarding the time period between March 30, 1995, when the arrest warrant was issued, and November 1, 1995, when the arrest warrant was executed, undermining Doyle's ability to show he was prejudiced by the delay.

■ Finally, Doyle first asserted his right to speedy trial in a post-conviction motion filed a day before his sentencing. In applying the four-part test, we have held that it is not absolutely necessary for a defendant to demand a speedy trial in order to establish a violation of the right. *Yung v. State*, 906 P.2d at 1032–33 ("Although a defendant need not demand a speedy trial in order to establish a violation of the right, the question of whether he did so, and if so when, is relevant to our inquiry."); *Osborne v. State*, 806 P.2d at 278. On the other hand, "[l]ess than vigorous assertions of the right to a speedy trial are given little weight." *Yung v. State*, 906 P.2d at 1033.

> We have held that appellant has an affirmative duty to make certain a speedy trial violation does not occur. *Cook v. State*, 631 P.2d 5 (Wyo.1981). Failure to fulfill that duty within a reasonable time operates as a waiver. In this case appellant's failure to assert his right to a speedy trial until the "eleventh hour" [about three weeks prior to trial] weighs heavily against him.

*Sodergren v. State*, 715 P.2d 170, 178 (Wyo. 1986). Here, where the appellant did not assert his right until 113 days *after* trial, this factor could not weigh against him more heavily. Thus, under the facts of this case, no violation of Doyle's right to speedy trial occurred.

### CONCLUSION

We hold that Doyle's incriminating statements were not obtained during a custodial interrogation and were voluntary and admissible. We also hold that Doyle waived his right to contest alleged defects affecting the validity of the arrest warrant because he failed to timely object. Finally, under the facts of this case, no violation of Doyle's right to speedy trial occurred.

Affirmed.