John Michael SIDES, Jr., Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–156.

Supreme Court of Wyoming.

July 30, 1998.

Sylvia L. Hackl, Public Defender; Donna D. Domonkos, Appellate Counsel; and Walter Eggers, Assistant Public Defender, Cheyenne, for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker–Musick, Assistant Attorney General, Cheyenne, for Appellee (Plaintiff).

* Chief Justice at time of oral argument.

Before LEHMAN, C.J., and MACY, GOLDEN and TAYLOR,* JJ., and VOIGT, District Judge.

VOIGT, District Judge.

This is an appeal from a judgment and sentence where appellant was sentenced to life imprisonment for attempted first-degree murder, and a consecutive sentence of six to ten years for aggravated assault and battery. Finding no error, we affirm.

## I. ISSUES

These three issues are presented for review:

1. Was appellant's right to a speedy trial violated?

2. Should the district court have granted appellant's motion for a change of venue?

3. Did the prosecutor's comments during closing argument deprive appellant of a fair trial?

## II. FACTS AND PROCEDURAL BACKGROUND

On December 29, 1995, John Michael Sides, Jr. (appellant) was an inmate in the Wyoming State Penitentiary, serving two life sentences and a term of three to five years. These sentences resulted from convictions for first-degree murder, attempted first-degree murder, and taking a deadly weapon into the Wyoming Boy's School. Appellant was housed in the medium security unit. During his incarceration, appellant had taken GED classes from a penitentiary employee, Frances Foster. He had not done well in class, and his repeated rule violations caused Ms. Foster to remove him from the student "payroll," which cost him about $30.00 per month.

Early in the afternoon of December 29th, appellant walked into Ms. Foster's office and asked, "you think that I'm crazy, don't you?" Ms. Foster told appellant to sit down, but instead he said, "I'm going to kill you, you bitch." He then raised a homemade knife or "shank" and stabbed her twice, once in the

chest and once in the leg. Ms. Foster called out for help, and a co-worker used an intercom to summon officers. In the meantime, hearing and seeing the commotion, an inmate named Charles Birr ran into the office to assist Ms. Foster. He tackled appellant and wrestled him to the floor, where he held him until officers arrived. In the process, Mr. Birr received two knife cuts to his chest and abdomen.

Appellant was charged with attempted first-degree murder for his attack upon Ms. Foster, and with aggravated assault and battery for the wounds inflicted upon Mr. Birr. He pled not guilty to the first charge, and guilty to the second. After a jury found him guilty of attempted first-degree murder, he was sentenced to another consecutive life sentence for the attempted first-degree murder, and to a consecutive term of six to ten years for the aggravated assault and battery.

## III. DISCUSSION

### A. SPEEDY TRIAL

 The right of any criminal defendant to a speedy trial is guaranteed by both the Sixth Amendment to the United States Constitution and Wyo. Const. art. 1, § 10. Wyoming applies a four-part test in determining whether a speedy trial right has been violated, in which test the court balances (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Doyle v. State*, 954 P.2d 969, 975 (Wyo.1998). In addition, Wyoming has adopted W.R.Cr.P. 48(b) to implement these constitutional guarantees:

(b) *Speedy trial.*

(1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.

(2) A criminal charge shall be brought to trial within 120 days following arraignment unless continued as provided in this rule.

(3) The following periods shall be excluded in computing the time for trial:

(A) All proceedings related to the mental illness or deficiency of the defendant;

(B) Proceedings on another charge;

(C) Delay granted by the court pursuant to paragraph (4) or (5);

(D) The time between the dismissal and the refiling of the same charge; and

(E) Delay occasioned by defendant's change of counsel or application therefor.

(4) Continuances not to exceed six months from the date of arraignment may be granted by the trial court as follows:

(A) On motion of defendant supported by affidavit; or

(B) On motion of the attorney for the state or the court if:

(i) The defendant expressly consents;

(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

(5) Any request to continue a trial to a date more than six months from the date of arraignment must be directed to the court to which appeals from the trial would be taken and may be granted by that court in accordance with paragraph (4).

(6) Any criminal case not tried or continued as provided in this rule shall be dismissed 120 days after arraignment.

(7) If the defendant is unavailable for any proceeding at which the defendant's presence is required, the case may be continued for a reasonable time by the trial court but for no more than 120 days after the defendant is available or the case further continued as provided in this rule.

(8) A dismissal for lack of speedy trial under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay.

Speedy trial analysis must consider both the constitutional test and the procedural rule, because a constitutional violation could still occur, despite the rule's timetables having been met. *McDaniel v. State*, 945 P.2d 1186, 1188 (Wyo.1997); *Kleinschmidt v. State*, 913 P.2d 438, 440 (Wyo.1996).

The criminal offenses in this case took place on December 29, 1995. Appellant was charged by the filing of an Information on January 17, 1996. He did not go to trial until February 11, 1997. At first glance, such delay might seem to raise the presumption of a speedy trial violation. However, in his appellate brief and oral argument, appellant candidly admits that a good part of the delay can be attributed to his own pretrial motions. By appellant's calculations, his trial was unjustly delayed twenty-six days beyond the 120–day guideline found in W.R.Cr.P. 48(b)(2).

Appellant was arraigned in the district court on September 16, 1996, and the jury trial was set for November 19, 1996. Any delays before the former date are not at issue here. The 120–day period expired on January 14, 1997. The original trial setting obviously was well within that period. However, on October 18, 1996, the State moved to continue the trial. Counsel for appellant stated on the record that he did not object to the continuance, so long as appellant's speedy trial right was not infringed. The jury trial was reset for January 14, 1997, within the 120–day limit.

On December 20, 1996, the State again moved to continue the trial. Appellant objected to the continuance, and a hearing was held. The State, in support of the continuance, contended that another defendant had to be tried on January 14th because of a speedy trial deadline, and also that several of the State's witnesses would not be available on that date. The district court granted the continuance, resetting the trial for March 5, 1997. Subsequently, the State moved to vacate the March 5th setting and reset the trial for February 11th, which motion was granted. The trial was held on February 11, 1997.

Appellant is candid in conceding that there is no evidence the State deliberately delayed the trial. Rather, the reasons for the continuance-the district court's trial schedule and the unavailability of witnesses-are "neutral." *See Wehr v. State*, 841 P.2d 104, 113 (Wyo. 1992). Appellant does, however, note that he repeatedly asserted his speedy trial right, and he contends he was prejudiced by the eventual delay. He identifies pretrial anxiety and pretrial incarceration as the prejudice he suffered. *See Springfield v. State*, 860 P.2d 435, 451 (Wyo.1993).

It is at this point that appellant's speedy trial argument evaporates. Never does he define or address with any particularity the "pretrial anxiety" he allegedly suffered. At most, he connects it to his second argument, which is that he was kept "in the hole" (solitary confinement) at the penitentiary. It must be remembered that appellant was caught in the act of the violent assault within the confines of the penitentiary, and that he pled guilty to aggravated assault and battery long before the trial. His segregation status was an administratively imposed sanction. It is his duty to show prejudice, and nowhere does he show that the solitary confinement would have been lifted earlier had the trial been earlier.

The jury trial in this case was set within the 120–day period contained in W.R.Cr.P. 48(b). Similarly, it was continued to a date well within the 180–day deadline, after a hearing. The district judge heard appellant's objections, then continued the trial for the valid reasons set forth above. Further, appellant has not shown such prejudice as is required to establish a violation of the rule or its constitutional underpinnings.

## B. CHANGE OF VENUE

Both the constitution and the statutes of the State of Wyoming provide that criminal cases are to be tried in the county where the offense occurred. Wyo. Const. art. 1, § 10; Wyo. Stat. § 1–7–102(a) (1997). On the other hand, the "constitutional standard for fairness" requires a panel of impartial jurors. *Collins v. State*, 589 P.2d 1283, 1289 (Wyo. 1979). To assure that protection, venue may be changed to another county:

Upon timely motion of the defendant, the court shall transfer the proceeding as to

that defendant to another county, but only if the court is satisfied that there exists within the county where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial in that county.

W.R.Cr.P. 21(a).

"[T]he decision to grant a change of venue is within the sound discretion of the trial court and, unless there has been an abuse of that discretion, the Supreme Court cannot intervene." *Amin v. State*, 811 P.2d 255, 257–58 (Wyo.1991). An abuse of discretion occurs when a court "'acts in a manner which exceeds the bounds of reason under the circumstances.'" *Seeley v. State*, 959 P.2d 170, 175 (Wyo.1998) (*quoting Fortner v. State*, 932 P.2d 1283, 1286 (Wyo.1997)). The movant has the burden of showing "prejudice so great that a fair trial cannot be obtained," and he must show "actual prejudice in the minds of the jurors." *Murry v. State*, 713 P.2d 202, 208 (Wyo.1986).

▇▇▇ Application of these standards leads to the logical conclusion that the extent of prejudice cannot be determined until voir dire, the ultimate test being what is revealed during that process. *Id.* In cases involving pretrial publicity, a two-part test is used:

First, the nature and extent of the publicity must be considered; second, the difficulty or ease in selecting a jury must be considered along with the amount of prejudice which actually appears during voir dire examination.

*Id.* There is no requirement that prospective jurors be completely ignorant of the facts and issues involved. *Punches v. State*, 944 P.2d 1131, 1135 (Wyo.1997) (*quoting Murry*, 713 P.2d at 208). Even where a juror may have formed or expressed an opinion as to the defendant's guilt from having read or heard news coverage, that juror may hear the case if the juror states, and the court is reasonably satisfied, that the juror can lay aside his opinion and render a verdict based only on the evidence presented in court. Wyo. Stat. § 7–11–106 (1997).

▇▇▇ In the instant case, appellant filed a motion for change of venue several months before the trial. The district court heard the

motion, and took it under advisement pending the voir dire process. The motion was based on the publication of three articles in the local Rawlins, Wyoming *Daily Times* and one article in the statewide *Casper Star Tribune.* Each of these articles dealt not only with the present case, but also mentioned appellant's prior murder and attempted murder convictions.

Needless to say, a jury was seated despite the pretrial publicity. The record reveals that many prospective jurors had heard of the case, but there is nothing to suggest prejudicial publicity. All jurors stated that if they had formed or expressed an opinion, they could set that opinion aside and decide the case properly. Beyond that, appellant's voir dire questioning may well have resulted in a waiver of any objection to the panel. During voir dire, appellant's attorney actually read portions of the newspaper articles to the jury, and spelled out appellant's prior convictions. Then, he passed the panel for cause (only later renewing his motion for change of venue). As will be discussed in the next section of this opinion, this conduct appears to have been part of counsel's overall trial strategy. For that reason, and because an impartial panel was seated, the district court did not abuse its discretion in denying the motion.

### C. CLOSING ARGUMENT

Appellant's theory of the case was that he was guilty of aggravated assault and battery upon Ms. Foster, but not attempted murder. From voir dire through closing argument, his contention was that he was a killer and if he had intended to kill Ms. Foster, she would be dead. For example, appellant's counsel concluded his opening statement with the following words:

And ladies and gentlemen of the jury, I submit to you that John Michael Sides, Jr. has killed before. He knows how to kill. And if he intended to kill any of those people, they wouldn't be here testifying today and we'd be here at a whole different sort of trial.

This approach to the case continued in appellant's closing argument. The gist of the argument was that the State had failed to

prove premeditation. Further, a considerable portion of the argument consisted of suggestions of what appellant, an experienced killer, would have done differently had he really intended to kill Ms. Foster. In rebuttal closing, the prosecutor referred to the above statements, and then said, "[t]hat is a line that the inmates tell each other when they're unsuccessful in attempts to murder somebody." Appellant objected to this comment as not being based on the evidence, but was overruled.

Appellant's objection is summed up in the following quote from his appellate brief:

The prosecutor's comment was an unsupported claim that the jury could assume that the Appellant, as a prisoner, automatically had the intent to kill Ms. Foster. The comment was particularly prejudicial in light of the Appellant's theory of defense, his lack of premeditated intent to kill Ms. Foster.

The purpose of closing argument is to allow counsel to offer ways of viewing the significance of the evidence. *Ross v. State,* 930 P.2d 965, 971 (Wyo.1996) (*quoting Browder v. State,* 639 P.2d 889, 893 (Wyo. 1982)). Claims of prosecutorial misconduct based on a statement made during closing argument are measured first by viewing the statement in the context of the entire argument and second by reference to the entire record, "and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial." *Arevalo v. State,* 939 P.2d 228, 230 (Wyo.1997). Counsel are to be afforded wide latitude in the scope of closing argument. *Vigil v. State,* 926 P.2d 351, 359 (Wyo.1996). On appeal, the district court's ruling as to the scope of permissible argument will not be reversed unless there has been a clear abuse of discretion, and then only if a reasonable probability exists that, absent the error, the verdict would have been different. *Arevalo,* 939 P.2d at 230.

Here, the prosecutor's comment in rebuttal closing was nothing more than an innocuous response to appellant's defense. Boiled down to bare essentials, appellant's counsel said, "He could have killed her if he had wanted to," and the prosecutor replied, "that's what they all say." When placed in the context of both closing arguments, and when viewed in light of the record as a whole, it simply cannot be said that this exchange had any effect upon the verdict. This was not a close case; the record fully supported the result. For example, while motive is not an element of attempted first-degree murder, the existence of motive may be probative. *Grabill v. State,* 621 P.2d 802, 808. (Wyo.1980). In the present case, the jury could infer motive from appellant's prior problems with Ms. Foster, and his vocal complaints about her earlier during the day of the incident. In addition, appellant took a weapon with him to confront Ms. Foster. He threatened to kill Ms. Foster. He attacked Ms. Foster with the weapon, stabbing her twice. He cut her rescuer. Then he practically bragged to the jury that he was an accomplished killer. There is no prejudice here.

## IV. CONCLUSION

Appellant's right to a speedy trial was not violated under the facts of this case, there was no error in the district court's denial of the motion for change of venue, and no prejudice resulted from the prosecutor's comment in closing argument.

Affirmed.

MACY, Justice, specially concurring.

I agree with the result which the majority reaches regarding the speedy trial issue, but I once again feel compelled to write separately because I disagree with the majority's statement that a speedy trial analysis must consider both the constitutional test and the procedural rule because a constitutional violation could still occur even though the rule's timetables have been met. I continue to espouse the viewpoint that W.R.Cr.P. 48(b) encompasses the constitutional guarantees provided by the *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), analysis and should be the exclusive framework by which we judge speedy trial issues.

The purpose of W.R.Cr.P. 48(b) was to move us past the laborious and subjective *Barker* constitutional analysis to a more clear and concise analysis under W.R.Cr.P. 48(b).

Recent Wyoming precedent has disregarded this approach, and I believe that this disregard has complicated matters by requiring an analysis to be made under both *Barker* and W.R.Cr.P. 48(b). In my opinion, Sides' speedy trial concerns could have been decided under W.R.Cr.P. 48(b), and the statement that both the constitutional test and the procedural rule must be utilized is incorrect and needlessly confuses the issue. I thoroughly explained my position in *Hall v. State*, 911 P.2d 1364, 1371 (Wyo.1996) (Macy, J., specially concurring), and in *Yung v. State*, 906 P.2d 1028, 1037 (Wyo.1995) (Macy, J., specially concurring). Those specially concurring opinions continue to reflect my position on this issue.