Donald E. NEWPORT, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 98–109.

Supreme Court of Wyoming.

July 6, 1999.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Monique McBride, Assistant Appellate Counsel, Representing Appellant.

Gay V. Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker, Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and Christopher C. Voigt and Carl S. McGuire III, Student Interns for the Prosecution Assistance Program, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant Donald Newport appeals from the judgment and sentence which was entered after he was convicted of taking indecent liberties with a minor.

We affirm.

## ISSUES

Newport presents three issues for our review:

ISSUE I

Whether the admission of testimony by one of the state's witnesses vouching for the credibility of the victim was error per se and denied the appellant his right to a fair trial by jury.

ISSUE II

Was the appellant's right to a speedy trial violated when his trial was continued for more than six months from the date of his arraignment without seeking leave from the Wyoming Supreme Court?

ISSUE III

Whether the district court abused its discretion by allowing testimony of A.L. when defense counsel was not notified in a timely fashion that she would be called as a witness.

## FACTS

The victim was an eight-year old girl. Newport had been married to her mother at one time, but he was not her father. On August 24, 1996, Newport picked up the victim to take her shopping for school supplies. They were supposed to meet several other members of Newport's family at his parents' house so that they could accompany Newport and the victim on the shopping trip. Instead of going directly to his parents' house, however, Newport took the victim to his mobile home.

When they arrived at the mobile home, Newport told the victim to be quiet because his roommate was sleeping. They went into Newport's bedroom where they sat on the bed and watched television. While they were watching television, Newport stood up and told the victim to close her eyes. He unzipped his pants, and then he took the victim's hand and made her "feel his crotch." Newport pulled the victim's pants down, but she immediately pulled them back up. He told the victim that, if she ever told her mother about the incident, he would say that she was a bad girl. Newport and the victim left the mobile home and went to Newport's parents' house.

Sarah Weber and her son were living with the victim's family when this incident occurred. The victim told Weber's son about the sexual assault, and he told his mother and the victim's mother what she had said. The two women questioned the victim about the incident and reported it to authorities.

The prosecution charged Newport with taking immodest, immoral, or indecent liberties[1] with the victim (Docket No. 24–196).

---

1. Wyo. Stat. § 14–3–105 (Supp.1996) (amended 1997). When this incident occurred, § 14–3–105(a) provided in pertinent part: "Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony."

He was arraigned on January 8, 1997, for the charge in Docket No. 24–196 and for a second charge of taking indecent liberties with a minor (Docket No. 24–195). Newport was tried on both counts during the week of April 7, 1997. The jury was not able to reach a verdict in Docket No. 24–196, and the trial judge declared a mistrial on that count. The jury acquitted Newport of the charge in Docket No. 24–195.

The trial court scheduled a second trial in Docket No. 24–196 for April 29, 1997. The trial was, however, continued twice. Docket No. 24–196 was joined with a third indecent liberties charge (Docket No. 24–318), and the trial on the two charges began on September 8, 1997. The jury convicted Newport in Docket No. 24–196 of taking indecent liberties with the victim, but it was not able to reach a verdict in Docket No. 24–318. Newport appeals to this Court from his conviction in Docket No. 24–196.

## DISCUSSION

### A. Vouching for the Victim's Credibility

Newport claims that the trial court committed error per se when it allowed Weber, who was a witness for the prosecution, to vouch for the victim's credibility. The state counters that the trial court did not commit plain error when it allowed Weber's testimony into evidence. We agree with the state.

Weber and her son lived with the victim's family. The victim told Weber's son about the sexual assault, and he reported it to Weber and the victim's mother. The two mothers asked the victim about the sexual assault. The prosecution questioned Weber at the trial about the victim's description of the sexual assault:

Q. After [your son] told you, after you actually talked to [the victim], what was your and [the victim's mother's] reaction to [the victim] at the time?

A. We believed her. She was scared enough—she was scared enough that she was very, very frightened of [Newport] hurting her. And ... our main question was, why didn't you tell us when this happened and she firmly believe[d] he was going to hurt her.

Newport did not object during the trial to Weber's testimony.

The jury is charged with resolving the factual issues, judging the witnesses' credibility, and ultimately determining whether the accused is guilty or innocent. *Gayler v. State*, 957 P.2d 855, 860 (Wyo. 1998); *Zabel v. State*, 765 P.2d 357, 362 (Wyo.1988). A witness may not, therefore, vouch for the credibility of another witness or a victim. *Gayler*, 957 P.2d at 860; *Curl v. State*, 898 P.2d 369, 373–74 (Wyo.1995).

In the seminal case of *Whiteplume v. State*, 841 P.2d 1332 (Wyo.1992), we reversed the appellant's conviction for first-degree sexual assault because a deputy sheriff impermissibly vouched for the victim's credibility by stating that he " 'listened to [the victim's] story and made a determination that she had been raped.' " 841 P.2d at 1337 (emphasis omitted). We recognized that the witness was a highly experienced law enforcement officer who should have known better than to make the improper statement. 841 P.2d at 1339. We also noted that the case against Whiteplume was tenuous and that it was, therefore, difficult to measure what effect the officer's testimony had on the jury's verdict. *Id.*

In 1995, this Court considered a case in which a sexual assault victim's mother testified that the victim appeared to be telling the truth when he reported the sexual assault to the police. *Curl*, 898 P.2d at 373–74. The mother did not testify that she believed her son's account of the sexual assault, and she did not say that her son was telling the truth. 898 P.2d at 374. We held that, even though the mother's testimony may have had the incidental effect of supporting the victim's credibility, the trial court did not commit plain error when it allowed the testimony into evidence at the trial. *Id.*

In *Brown v. State*, 953 P.2d 1170 (Wyo. 1998), the appellant was convicted of conspiring to commit first-degree murder. During the trial, the prosecution asked a witness whether or not she had anything against the accused and his co-conspirator. 953 P.2d at 1181. The witness replied: " 'Just the fact that they killed somebody.' " *Id.* The appel-

lant claimed that he was entitled to have his conviction reversed because the witness impermissibly expressed her opinion about his guilt. *Id.*

We observed in *Brown* that, when we looked at the context of the statement, it was clear the prosecutor was inquiring only as to whether the witness was biased against the appellant and his co-conspirator. 953 P.2d at 1182. The prosecutor did not deliberately elicit the witness' opinion about the appellant's guilt, and he did not attempt to take advantage of the witness' statement during his closing argument. *Id.* Applying a plain error analysis, we concluded that the witness' statement did not violate, in a clear and obvious way, the rule against giving opinion testimony and that a substantial right belonging to the appellant was not adversely affected. *Id.*

■ ´ In the case at bar, Newport maintains that Weber's testimony was error per se. We have determined that the error-per-se rule applies when the prosecution actually asks a witness to give an opinion as to the accused's guilt. *Dudley v. State,* 951 P.2d 1176, 1178–79 (Wyo.1998); *Bennett v. State,* 794 P.2d 879, 882 (Wyo.1990). When a witness ostensibly vouches for another witness' credibility and the accused fails to object to the testimony, we apply our plain error standard of review. *Gayler,* 957 P.2d at 859–860; *Curl,* 898 P.2d at 374. We utilize a three-part test to determine whether a trial court committed plain error.

> First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.

*CB v. State,* 749 P.2d 267, 268–69 (Wyo.1988); *see also Pierson v. State,* 956 P.2d 1119, 1123 (Wyo.1998).

The first element of the plain error test is satisfied in this case because the record clearly reflects the testimony which Newport claims was erroneous. We consider next whether Weber's testimony violated, in a clear and obvious way, the rule which forbids one witness to vouch for another witness' credibility.

The prosecutor questioned Weber, who was a lay witness, about her and the victim's mother's reactions to the victim's account of the sexual assault. The prosecutor had earlier asked Weber a similar question concerning her son:

> Q. And what was your and [the victim's mother's] reaction to the information provided by [your son]?
>
> A. Actually, at that point there was no anger, shock, [or] anything else. It was more we needed to talk to [the victim]. [My son] had severe ADHD. If you show him you're angry or upset, he will become very agitated and trying to get him to calm down takes longer than it does just to have a blank face. So we waited for [the victim] and [her brother] to come home so we could talk to [the victim].

The prosecutor could have reasonably expected to get a similar response from Weber when she asked about the mothers' reactions to the victim's account of the sexual assault. Accordingly, the prosecutor could have anticipated that Weber would testify about what the women did after they talked to the victim about the sexual assault.

Weber's testimony concerning the victim's veracity was unexpected and was not elicited by the prosecution. The prosecutor did not question Weber any further about the victim's credibility, and she did not use the challenged testimony as a basis for her closing argument. Additionally, there is no indication in the record that Weber deliberately interjected her opinion on the victim's truthfulness into her testimony. *See Whiteplume,* 841 P.2d at 1339.

Weber's testimony was arguably inappropriate because she commented that she believed the victim's account of the sexual assault. Nevertheless, given the context of Weber's testimony, we do not believe that her isolated statement violated, in a clear and obvious way, the rule against allowing one witness to vouch for another witness' credibility. *See Brown,* 953 P.2d at 1182. Furthermore, the victim testified extensively at the trial, and the jurors had a good opportu-

nity to observe her demeanor and to judge her credibility for themselves. As a consequence, the prejudice which resulted from Weber's testimony was limited. Weber's single statement does not undermine our confidence in the jury's verdict. The trial court did not commit plain error when it allowed Weber's statement into evidence.

## B. Speedy Trial

Newport contends that his right to have a speedy trial was violated when his second trial was continued for more than six months after his arraignment without the prosecution seeking leave from the Wyoming Supreme Court under W.R.Cr.P. 48(b)(5) to continue the trial. We disagree.

■ W.R.Cr.P. 48(b) protects a defendant's right to have a speedy original trial; however, it does not address a defendant's right to have a speedy retrial following a mistrial. When the prosecution of a defendant is disrupted by a mistrial, the commencement of the original trial, if it was timely, satisfies the time requirements of W.R.Cr.P. 48(b), and subsequent retrials are excluded from the requirements of the rule. *See Fisher v. Commonwealth*, 26 Va.App. 788, 497 S.E.2d 162, 164 (1998). In a retrial situation, W.R.Cr.P. 48(b) does not require the prosecution to seek permission from this Court to continue the trial "to a date more than six months from the date of arraignment." W.R.Cr.P. 48(b)(5).

Courts in other jurisdictions have decided cases in which the defendants claimed that their right to have a speedy retrial was violated. Some states have court rules or statutes that address speedy trial concerns in retrial situations. *See, e.g., Mustafoski v. State*, 954 P.2d 1042, 1043 (Alaska Ct.App. 1998); *Mason v. People*, 932 P.2d 1377, 1381 (Colo.1997) (en banc). Other states, like Wyoming, have court rules and statutes which protect a criminal defendant's right to receive a speedy first trial but do not address retrials. *See, e.g., State v. Avelar*, 129 Idaho 700, 931 P.2d 1218, 1220 (1997); *Fisher*, 497 S.E.2d at 164; *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583, 585 (1982); *Icgoren v. State*, 103 Md.App. 407, 653 A.2d 972, 976 (Md.Ct.Spec.App.), *cert. denied*, 339 Md. 167,

661 A.2d 700 (1995); *Handley v. State*, 574 So.2d 671, 674 (Miss.1990). The Idaho Supreme Court held that its speedy trial rule does not apply to retrials. *Avelar*, 931 P.2d at 1220. Similarly, the Mississippi Supreme Court held that its statutory speedy trial rule is satisfied once a defendant has been timely brought to trial even if the trial results in a mistrial. *Handley*, 574 So.2d at 674.

■ We hold that, because W.R.Cr.P. 48(b) does not apply to retrials, the prosecution did not violate W.R.Cr.P. 48(b)(5) when it failed to seek leave to continue Newport's retrial to a date which was more than six months from the date of his arraignment.

## C. Child Witness Testimony

Newport claims that the trial court abused its discretion by allowing A.L., who was ten years old, to testify that Newport sexually assaulted her in Montana. He claims that he was unfairly surprised by A.L.'s appearance at his second trial because the prosecution did not comply with the trial court's order by providing him with sufficient notification that A.L. would be called as a witness. The state maintains that Newport was aware that A.L. was a potential witness and that the trial court did not abuse its discretion when it allowed her to testify. We concur with the state.

The trial court has discretion in determining whether or not evidence is admissible. We will reverse a trial court's decision on the admissibility of evidence only if the trial court abused its discretion. "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could [have] reasonably conclude[d] as it did." *Hilterbrand v. State*, 930 P.2d 1248, 1250 (Wyo. 1997).

*Clark v. Gale*, 966 P.2d 431, 435 (Wyo.1998) (some citations omitted).

On January 9, 1997, Newport filed a motion for notice of the prosecution's intent to introduce evidence under W.R.E. 404(b). The trial court granted the motion and di-

rected the prosecution to disclose information concerning its intention to introduce evidence of Newport's other bad acts. Prior to Newport's first trial, the prosecution filed a notice listing its witnesses and a notice stating its intent to present other-bad-acts evidence at the trial. Those notices did not mention A.L. as a potential witness in the first trial.

On April 25, 1997, the prosecution filed a motion for a continuance of the second trial. In that motion, the prosecution represented that a report existed which evidenced "similar allegations against [Newport] in Montana." The motion continued: "If witnesses regarding this incident can be located, it would also be necessary for the Court to address the issue of the evidence in a pretrial 404(b) hearing." The record indicates that Newport received a copy of a Montana social worker's report concerning an allegation that he had sexually assaulted A.L. Further, Newport's trial counsel contacted A.L. during the summer before the second trial.

On September 2, 1997, Newport filed a motion in limine to exclude evidence that he had molested two children in Montana. The prosecution filed a notice on September 5, 1997, stating that it intended to introduce evidence that Newport sexually assaulted A.L. At the hearing on the admissibility of A.L.'s testimony, the prosecution represented that it had become aware of A.L.'s location only one day before it filed the notice. Newport objected to the admission of A.L.'s testimony, arguing, in part, that he had not received adequate notice that she would be called as a witness at the trial. The trial court rejected Newport's argument and allowed A.L. to testify at the second trial.

Newport claims that he was "ambushed" and unfairly surprised by A.L.'s appearance and testimony at the trial. The record belies his contention. The prosecution gave ample notification that it was investigating an allegation that Newport had sexually assaulted A.L. and that the result of its investigation could be introduced as evidence at Newport's second trial. Newport's trial attorney was aware of A.L.'s claim, had received a copy of the Montana social worker's report, and had actually contacted A.L. during the months leading up to the trial. Newport even filed a motion in limine to exclude evidence regarding the incident involving A.L. The trial court did not, therefore, abuse its discretion when it allowed A.L. to testify at Newport's second trial.

Affirmed.

LEHMAN, Chief Justice, concurring, with whom GOLDEN, Justice, joins.

While I agree that W.R.Cr.P. 48 does not apply to retrials, I believe Newport's speedy trial claim must be analyzed under constitutional speedy trial guarantees to determine if the delay between mistrial and retrial deprived Newport of his right to a speedy trial.

Preliminarily, I consider this issue to be properly before the court. While Newport's brief relied on Rule 48, the important fact is that Newport argued that he was denied a speedy trial. It is well established that even when Rule 48 has not been violated, an appellant's speedy trial claim is further subject to constitutional analysis. *Sides v. State*, 963 P.2d 227, 230 (Wyo.1998); *Hall v. State*, 911 P.2d 1364, 1370–71 (Wyo.1996); *Yung v. State*, 906 P.2d 1028, 1032 (Wyo.1995). In reliance on this court's practice of analyzing both the rule-based and constitutional arguments, the State devoted nine pages of its brief to the constitutional issue. In addition, "recent experience with post-conviction remedies teaches us that the failure of counsel to raise issues which implicate constitutional rights of a defendant in an appeal will result in those issues being presented in a subsequent proceeding under a claim of ineffective assistance of counsel. Consequently, judicial efficiency strongly suggests the treatment of obvious matters in the first appeal." *Stephens v. State*, 774 P.2d 60, 63 (Wyo.1989). Under these circumstances, I have no hesitation in addressing the constitutional speedy trial issue.

I also have no hesitation concluding that the constitutional speedy trial protections apply to Newport's retrial. In *Grable v. State*, 649 P.2d 663, 669–70 (Wyo.1982), this court used the constitutional analysis in denying Grable's claim that he had not received a speedy retrial after the appellate reversal of his first conviction. Besides *Grable's* ac-

knowledgment that the speedy trial guarantees apply to retrials, this court has consistently analyzed speedy trial claims under both Rule 48 and the constitution. *Sides v. State*, 963 P.2d at 230; *Hall v. State*, 911 P.2d at 1370–71; *Yung v. State*, 906 P.2d at 1032. Because Rule 48 does not apply in this case, the reason to apply the constitutional analysis is far more compelling than in the usual speedy trial case: the only speedy trial guarantee available upon retrial is the constitutional one. Furthermore, even the courts that have held their speedy trial rule or statute inapplicable to retrials recognize that a defendant retains the constitutional right to a speedy trial. *State v. Avelar*, 129 Idaho 700, 931 P.2d 1218, 1222 (1997); *Handley v. State*, 574 So.2d 671, 677 (Miss.1990); *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583, 585 (1982). Relying on the foregoing, I would go one step further than the majority and analyze the constitutional issue.

The standard generally applied to determine if a criminal defendant received a speedy retrial is reasonableness under the federal and state constitutions. *Grable v. State*, 649 P.2d at 669; *State v. Fanning*, 437 N.E.2d at 585; *Handley v. State*, 574 So.2d at 677; *State v. Kula*, 254 Neb. 962, 579 N.W.2d 541, 545–46 (1998); *People v. Tedder*, 83 Ill.App.3d 874, 39 Ill.Dec. 53, 404 N.E.2d 437, 443 (1980), *overruled on other grounds by People v. Tyllas*, 96 Ill.App.3d 1, 51 Ill. Dec. 211, 420 N.E.2d 625, 627 n. 1 (1981). In making this determination, we are guided by the four-part test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and adopted by this court in *Cosco v. State*, 503 P.2d 1403, 1405 (Wyo. 1972). This test requires us to balance 1) the length of delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. *Doyle v. State*, 954 P.2d 969, 975 (Wyo.1998); *Yung v. State*, 906 P.2d at 1032; *Grable v. State*, 649 P.2d at 669.

Turning to Newport's claim, the first issue to resolve is which interval should be used to calculate the length of delay. Should our analysis apply to the interval between mistrial and retrial, or should we also include the time prior to mistrial? In answering this question, the Maryland Court of Special Appeals, after reviewing numerous cases, held that absent extraordinary circumstances, the only time to be considered in this sort of case is the time between the mistrial and the subsequent trial. *Icgoren v. State*, 103 Md. App. 407, 653 A.2d 972, 978 (1995). *See also State v. Kula*, 579 N.W.2d at 546–47; *Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978); *People v. Tedder*, 39 Ill.Dec. 53, 404 N.E.2d at 443. The Maryland court's decision is consistent with our determination in *Grable v. State*, 649 P.2d at 669–70. There, after Grable's first conviction was reversed and remanded to the district court, *Grable v. State*, 601 P.2d 1001 (Wyo.1979), thirteen and one-half months passed before Grable was retried. 649 P.2d at 670. In rejecting Grable's speedy trial claim, this court considered only the interval between filing of the mandate in district court and the retrial. *Id.* Therefore, I believe the appropriate interval to consider is the time from mistrial to retrial.

Here, Newport's first trial resulted in a mistrial on April 11, 1997. Although the district court initially scheduled the retrial for April 29, 1997, the State was granted two continuances which caused the retrial to be postponed until September 8, 1997. From April 11 to September 8, 150 days passed from Newport's first trial to his retrial.

A review of Wyoming cases indicates that a 150–day delay is insufficient to create a presumption of prejudice. *See Yung v. State*, 906 P.2d at 1032 (delay of 171 days not presumptively prejudicial); *Osborne v. State*, 806 P.2d 272, 277 (Wyo.1991) (244 days not presumptively prejudicial but requires further analysis); *Sides v. State*, 963 P.2d at 230 (146 days). While these Wyoming cases concern speedy trial claims pertaining to a first trial, other jurisdictions have addressed the delay between mistrial and retrial. These courts have found delays similar to the one presented here insufficient to constitute presumptive prejudice. *See Handley v. State*, 574 So.2d at 677 (delay of 6 months between mistrial and retrial not presumptively prejudicial); *Bryant v. State*, 1998 WL 850105, *11 (Miss.App.1998) (delay of 165 days between mistrial and retrial does not constitute pre-

sumptive prejudice). In addition, although W.R.Cr.P. 48 is not applicable to this factual scenario, its time constraints are instructive. *See McDaniel v. State*, 945 P.2d 1186, 1189 (Wyo.1997). The 150–day delay presented here is well within the 180 days allowed, upon proper continuance, under Rule 48(b)(4). For these reasons, I would conclude that a 150–day delay is insufficient to establish presumptive prejudice.

When the length of delay is neither presumptively prejudicial nor significantly long, no further analysis into the *Barker v. Wingo* factors is warranted. *McDaniel v. State*, 945 P.2d at 1188; *Phillips v. State*, 597 P.2d 456, 460 (Wyo.1979); *Phillips v. State*, 835 P.2d 1062, 1069 (Wyo.1992). Indeed, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d 101. Finally, it should be noted that Newport did not reassert his demand for a speedy trial after his mistrial. We have repeatedly emphasized "[l]ess than vigorous assertions of the right to a speedy trial are given little weight." *Hall v. State*, 911 P.2d 1364, 1371 (Wyo.1996) (quoting *Yung v. State*, 906 P.2d at 1033); *Robinson v. State*, 627 P.2d 168, 171 (Wyo.1981). I would hold that the 150–day delay between mistrial and retrial did not deny Newport his constitutional right to a speedy trial.

GOLDEN, J., concurring in part and dissenting in part.

I concur in that part of the majority opinion which holds that W.R.Cr.P. 48 does not apply to retrials, but join in Chief Justice Lehman's separate concurring opinion that Newport's speedy trial claim must be analyzed under constitutional speedy trial guarantees; and I agree with his analysis of that point. I also concur in that part of the majority opinion which treats the child witness testimony issue and holds that the trial court did not abuse its discretion when it allowed A.L. to testify.

I respectfully dissent, however, to that part of the majority opinion which holds that the trial court did not commit plain error when it allowed into evidence Sarah Weber's testimony in answer to the prosecutor's question:

Q. After [your son] told you, after you actually talked to [the victim], what was your and [the victim's mother's] **reaction** to [the victim] at the time?

(Emphasis supplied).

Weber's answer was:

A. **We believed her.** She was scared enough—she was scared enough that she was very, very frightened of Donald [Newport] hurting her. And that was our main question was, why didn't you tell us when this happened and she firmly believe[d] he was going to hurt her.

(Emphasis supplied).

For one thing, the prosecutor's question, *as phrased*, obviously seeks to elicit irrelevant evidence: the "reaction" of Weber and the victim's mother to an out-of-court statement of the victim. Their "reaction" has no probative value as evidence in the prosecution's case-in-chief. I find it suspicious that an experienced prosecutor in a case involving such a serious charge would ask such an irrelevant question; one gets an uneasy feeling that such an irrelevant question might be a signal that the witness give an answer that expresses an opinion of the victim's credibility. "Reaction" is a broad term; I believe it is reasonably foreseeable that the listener's "reaction" to a speaker's "statement" would encompass the listener's opinion of the credibility of the speaker and her statement.

For another thing, assuming that the prosecutor's question was not a signal for the witness's credibility-opinion-testimony, and the plain error standard, not the *per se* error standard, applies, in my judgment Weber's answer, "we believed her," etc., is a clear and unequivocal violation of a clear and unequivocal rule of law. *See, e.g., McCone v. State*, 866 P.2d 740, 751 (Wyo.1993) ("witness credibility 'is the exclusive province of the jury;' and neither expert nor lay witnesses should be permitted to testify that another witness is or is not telling the truth."); *Zabel v. State*, 765 P.2d 357, 362 (Wyo.1988) ("A clear and unequivocal rule of law exists concerning

this type of testimony: The credibility of witnesses is the exclusive province of the jury and may not be the subject of expert testimony."); *Lessard v. State,* 719 P.2d 227, 233 (Wyo.1986); and *Smith v. State,* 564 P.2d 1194, 1200 (Wyo.1977).

Finally, my confidence in the jury verdict is undermined because this was a close case in which no physical evidence existed; the only eyewitnesses were the accused and the victim; the key issue for the jury was the victim's credibility; and the opinions ("reactions") of Sarah Weber and the victim's mother would reasonably have substantial influence on the jury's determination of that key issue. Both Weber and the victim's mother lived with the victim; they knew her better than anyone else. Their "reaction" to her story would undoubtedly impress the jury.

I would reverse and remand for a new trial.