# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 42

**OCTOBER TERM, A.D. 2020**

**March 18, 2021**

JOHN MICHAEL SIDES, JR.,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-15-0298, S-20-0009, S-20-0162

*No. S-20-0009*
*Appeal from the District Court of Washakie County*
*The Honorable Bobbi Dean Overfield, Judge*

*Nos. S-15-0298, S-20-0162*
*Appeals from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*
> Lauren McLane, Faculty Director, Defender Aid Clinic, University of Wyoming College of Law; Emily Williams, Student Director; Andrew Sickenberger, Student Director. Argument by Mr. Sickenberger.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General. Argument by Mr. Eames.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   John Michael Sides, Jr., is serving consecutive life sentences for crimes he committed while he was a juvenile in Washakie County and in Carbon County.  He appeals Washakie County District Court orders denying his motions to correct an illegal sentence and to withdraw his guilty plea (S-20-0009, the Washakie County appeal).  He also appeals Carbon County District Court orders imposing sentences consecutive to his Washakie County sentence and denying his Rule 21 motion (S-15-0298 and S-20-0162, the Carbon County appeal).  Those appeals have been consolidated here.  We affirm the Washakie County decisions; the district court did not have jurisdiction to consider arguments raised in Mr. Sides' motion to correct his illegal sentence, and he is time-barred from withdrawing his guilty plea.  We affirm the Carbon County sentence and the denial of Mr. Sides' Rule 21 motion.

## ISSUES

[¶2]   Mr. Sides raises twelve issues (eight in the Washakie County appeal and four in the Carbon County appeal).  We address the dispositive issues:

1. Did the Washakie County District Court have jurisdiction to consider the application of parole eligibility statutes in a motion to correct an illegal sentence?

2. Did the Washakie County District Court have jurisdiction to consider Mr. Sides' motion to withdraw his guilty plea?

3. Does Mr. Sides' Carbon County sentence result in an unconstitutional de facto life sentence?

4. Did Mr. Sides receive ineffective assistance of counsel at his Carbon County resentencing hearing?

## FACTS

[¶3]   Limited facts are germane to the issues presented in this appeal.  We provide a brief overview of the relevant facts and the rulings.

**A.     Washakie County**

[¶4]   In 1995, when Mr. Sides was seventeen years old, he resided at the Wyoming Boys' School and had gone home for a visit.  While at home, he ran away and was subsequently arrested.  Deputy Steve Crerar, a Fremont County Sheriff's deputy, picked Mr. Sides up from the jail and drove him back to the Boys' School.  On the way, Mr.

1

Sides removed one of his handcuffs. As they reached the Boys' School, he wrestled Deputy Crerar's gun from him and shot him in the head, killing him. He also fired shots at Ricky Robertson, who was nearby, striking him in the neck and wounding him. Still carrying the weapon, Mr. Sides entered the Boys' School welding shop and eventually surrendered. Mr. Sides pled guilty to first-degree murder, attempted first-degree murder, and taking a deadly weapon into the Boys' School. Mr. Sides was sentenced to two consecutive life sentences (for first-degree murder and attempted first-degree murder) and three to five years (for taking a deadly weapon into the Boys' School) to run consecutively to the life sentences.

[¶5] Mr. Sides did not file a direct appeal in the Washakie County matter. However, in 2013, following the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), he filed a motion to correct an illegal sentence pursuant to W.R.Cr.P. 35(a). Mr. Sides argued in his 2013 filings, and in supplemental filings made during the course of the Washakie County matter, that his sentences violated the United States Constitution, the protections afforded by *Miller* and its progeny—that a life sentence without the possibility of parole violates the Eighth Amendment's prohibition against cruel and unusual punishment when imposed on a juvenile without an individualized sentencing hearing—and the Wyoming Constitution. *See, e.g.*, *Sen v. State*, 2017 WY 30, ¶ 18, 390 P.3d 769, 775 (Wyo. 2017) (*Sen III*) ("an aggregate sentence mandating 45 years of parole ineligibility constitutes a *de facto* life sentence" and is unconstitutional absent the sentencing court's finding of irreparable corruption (citing *Bear Cloud v. State*, 2014 WY 113, ¶ 33, 334 P.3d 132, 141–42 (Wyo. 2014) (*Bear Cloud III*))). He also argued that Wyo. Stat. Ann. §§ 6-10-301(c) and 7-13-402 as they apply to him are unconstitutional because they would deprive him of parole eligibility to which he is entitled as a juvenile offender.

[¶6] In 2019, Mr. Sides filed a motion to withdraw his guilty plea.[1] In that motion, he argued that he should be allowed to withdraw his plea based on ineffective assistance of counsel concerning the advice he received as to the length of his potential sentence.

[¶7] Mr. Sides' motions were heard on July 17, 2019, and on September 13, 2019. The district court concluded that Mr. Sides' consecutive Washakie County sentences were illegal and should be corrected. It modified Mr. Sides' sentences to run concurrently, not consecutively. The district court concluded it had no jurisdiction over Mr. Sides' parole

---

[1] Between 2013 and 2019, Mr. Sides' Washakie County case was stayed pending the certification of questions to the Wyoming Supreme Court in the case of *State v. Mares*, 2014 WY 126, 335 P.3d 487 (Wyo. 2014). After that stay was lifted, in 2016, Mr. Sides presented a second set of certified questions to the Court. The Court declined to answer those questions, and the district court proceeded to address Mr. Sides' motion to correct an illegal sentence, beginning in April 2017, with a status conference, and culminating in hearings in July and September 2019.

eligibility argument. It denied his motion to withdraw his plea. Mr. Sides appeals those rulings.

## B.     Carbon County

[¶8]    Approximately six months after he was originally sentenced in Washakie County, when he was still seventeen, Mr. Sides stabbed Frances Foster, a teacher at the Wyoming State Penitentiary. During the incident, he wrestled with Charles Birr, another inmate who had come to assist Ms. Foster, inflicting wounds on his chest and abdomen. *Sides v. State*, 963 P.2d 227, 228–29 (Wyo. 1998) (*Sides I*). Mr. Sides was charged with attempted first-degree murder (stabbing Ms. Foster) and aggravated assault and battery (wounding Mr. Birr). A jury found him guilty of the first charge, and he pled guilty to the second. *Id.* at 229. He was sentenced to a life sentence, consecutive to the Washakie County sentences, for the attempted first-degree murder, and to a term of six to ten years, consecutive to his Carbon County life sentence, for the aggravated assault and battery. *Id.*

[¶9]    In the Carbon County matter, Mr. Sides filed a direct appeal. *See Sides I.* In 2013, he filed a motion to correct an illegal sentence, also arguing these sentences violated *Miller* and its progeny. The district court granted his motion and, after a 2015 resentencing hearing, reduced his sentence to life for attempted murder, to be served consecutively to his Washakie County sentence, and a concurrent three to five years for aggravated assault and battery. In effect, Mr. Sides is serving a twenty-five-year to life sentence for his Carbon County crimes, which is consecutive to his twenty-five-year to life sentence for his Washakie County crimes.

[¶10]  Mr. Sides filed a motion pursuant to W.R.A.P. 21 (Rule 21 motion), arguing his counsel was ineffective at the Carbon County resentencing hearing. The district court denied that motion. Mr. Sides appeals his sentence and the district court's decision on his Rule 21 motion.

## *DISCUSSION*

### I.     *Did the Washakie County District Court have jurisdiction to consider the application of parole eligibility statutes in a motion to correct an illegal sentence?*

[¶11]  In 2007, Mr. Sides was housed in Nevada. While there, he was convicted of attacking another inmate with a deadly weapon.

[¶12]  Wyo. Stat. Ann. § 7-13-402 sets forth the general powers of the Wyoming Board of Parole (BOP). It precludes the consideration of parole for an inmate

if, while serving [the sentence from which he is otherwise eligible for parole], he has:

> (i)    Made an assault with a deadly weapon upon any officer, employee or inmate of any institution; or
>
> (ii)   Escaped, attempted to escape or assisted others to escape from any institution.

Wyo. Stat. Ann. § 7-13-402(b)(i)–(ii) (LexisNexis 2019).[2]

[¶13] In his W.R.Cr.P. 35 motion to correct his Washakie County sentences, Mr. Sides argued that his Nevada conviction did not render him ineligible for parole under Wyo. Stat. Ann. § 7-13-402(b) because that provision is unconstitutional as it applies to him. The district court concluded that the statute's applicability was not ripe for review because the BOP had never denied Mr. Sides parole based on the statute. The court also concluded it lacked jurisdiction to determine the statute's constitutionality. Mr. Sides appeals, arguing that the district court had jurisdiction to consider the constitutionality of § 7-13-402(b) as it applies to him.[3]

## A.    Standard of Review

[¶14] Questions of jurisdiction and justiciability are subject to de novo review. *See Allred v. Bebout*, 2018 WY 8, ¶ 29, 409 P.3d 260, 268 (Wyo. 2018); *DeLoge v. State*, 2010 WY 60, ¶ 15, 231 P.3d 862, 865 (Wyo. 2010) (citing *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 9, 206 P.3d 722, 726 (Wyo. 2009); *Coleman v. State*, 2005 WY 69, ¶ 11, 115 P.3d 411, 413–14 (Wyo. 2005)); *Brown v. City of Casper*, 2011 WY 35, ¶ 8, 248 P.3d 1136, 1139 (Wyo. 2011).

---

[2] Wyoming statutes provide that juveniles convicted of life sentences are eligible for parole after serving twenty-five years, subject to the parole eligibility restrictions set forth in Wyo. Stat. Ann. § 7-13-402(b):

> A person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration, except that if the person committed any of the acts specified in W.S. 7-13-402(b) after having reached the age of eighteen (18) years the person shall not be eligible for parole.

Wyo. Stat. Ann. § 6-10-301(c) (LexisNexis 2019).

[3] Mr. Sides also makes substantive arguments that application of Wyo. Stat. Ann. § 7-13-402(b) is unconstitutional under *Miller* and its progeny and under the Wyoming State Constitution. We do not reach those arguments.

**B.      Can Mr. Sides challenge Wyo. Stat. Ann. § 7-13-402(b) in a motion to correct an illegal sentence brought pursuant to W.R.Cr.P. 35?**

[¶15]  Mr. Sides brought his motion to correct his sentence pursuant to Rule 35 of the Wyoming Rules of Criminal Procedure.  Rule 35 provides: "The court may correct an illegal sentence at any time.  Additionally the court may correct, reduce, or modify a sentence within the time and in the manner provided herein for the reduction of sentence."  W.R.Cr.P. 35(a).  "Rule 35 authorizes challenges to illegal sentences only." *Pfeil v. State*, 2014 WY 137, ¶ 24, 336 P.3d 1206, 1213 (Wyo. 2014).  An illegal sentence is defined as a sentence that "exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law."  *Id.* (quoting *Martinez v. State*, 2002 WY 10, ¶ 9, 39 P.3d 394, 396 (Wyo. 2002)) (quoting *Duran v. State*, 949 P.2d 885, 887 (Wyo. 1997)).

[¶16]  We have addressed claims like those Mr. Sides raises before.  In *Pfeil*, the appellant argued his sentence was illegal under Rule 35(a) because of the way the BOP and the Department of Corrections (DOC) administered it.  He "fault[ed] the BOP for denying his requests for good time credit, parole and a recommendation to the governor that he be given a commutation." *Pfeil*, ¶ 23, 336 P.3d at 1213.  He also "fault[ed] the DOC for garnishing his prison account . . . and for implementing policies requiring inmates to pay for various personal items . . . ." *Id.*  We concluded Mr. Pfeil's claims were not properly brought in a motion to correct illegal sentence:

> None of Mr. Pfeil's complaints pertain to the validity of the underlying sentence.  Instead, he bootstraps his complaints over how his sentence is being administered into an argument that the BOP and DOC have effectively altered his sentence to the extent it is now illegal.  Rule 35 addresses only sentences which are illegal in fact, not sentences which inmates claim are being executed illegally by the State. *See, e.g.*, *Gould v. State*, 2006 WY 157, ¶ 25, 151 P.3d 261, 268 (Wyo. 2006).  It does not, therefore, provide an avenue to Mr. Pfeil for relief from the BOP's and DOC's actions.

*Id.* ¶ 24, 336 P.3d at 1213; *see also Barela v. State*, 2016 WY 68, ¶ 9, 375 P.3d 783, 787 (Wyo. 2016) (*Barela II*) ("Appellant's claims pertain to how his sentence has been administered by the Department of Corrections and the Board of Parole rather than the legality of his underlying sentence.  Accordingly, Rule 35 does not provide an avenue of relief for Appellant."); *Wiley v. State*, 2020 WY 49, ¶ 14, 461 P.3d 413, 416 n.2 (Wyo. 2020) (noting "the effect of Mr. Wiley's escape charge on his eligibility for parole would not properly be addressed in a proceeding to correct an illegal sentence").

5

[¶17] Notwithstanding this precedent, Mr. Sides argues that the district court had jurisdiction to consider his argument that the application of the statute renders his sentence illegal because district courts are courts of general jurisdiction, and have "jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court . . . ." Wyo. Const. art. 5, § 10. We are not persuaded that this provision grants authority to consider the constitutionality of Wyo. Stat. Ann. § 7-13-402(b) in a Rule 35 motion. "Rule 35 addresses only sentences which are illegal in fact, not sentences which inmates claim are being executed illegally by the State." *Pfeil*, ¶¶ 23–24, 336 P.3d at 1213 (citing *Gould v. State*, 2006 WY 157, ¶ 25, 151 P.3d 261, 268 (Wyo. 2006)). Section 7-13-402(b) constrains the BOP's authority to grant parole; it has nothing to do with the legality of the underlying sentence.

[¶18] Mr. Sides' arguments regarding the BOP's potential application of the parole eligibility statute are not cognizable in a Rule 35 motion. The constitutionality of Wyo. Stat. Ann. § 7-13-402(b) does not pertain to the validity of his underlying sentence; rather, it is an argument directed at the BOP's administration of his sentence. Rule 35 does not provide Mr. Sides an avenue for relief. The district court lacked jurisdiction to consider the issue.[4]

## II. Did the Washakie County District Court have jurisdiction to consider Mr. Sides' motion to withdraw his guilty plea?

[¶19] Mr. Sides pled guilty to the Washakie County charges in June 1995. Twenty-four years later, in June 2019, he filed a motion to withdraw his guilty plea. The district court concluded that it lacked jurisdiction to consider Mr. Sides' motion because the time to appeal his original conviction had passed. Mr. Sides appeals.

[¶20] We review questions of jurisdiction de novo. *See supra* ¶ 14. The withdrawal of a guilty plea is governed by W.R.Cr.P. 32(d). *Ingersoll v. State*, 2004 WY 102, ¶ 12, 96 P.3d 1046, 1050 (Wyo. 2004). Pursuant to that rule, a defendant must show "manifest injustice" when he seeks to withdraw his plea after sentencing. W.R.Cr.P. 32(d); *Palmer v. State*, 2008 WY 7, ¶ 11, 174 P.3d 1298, 1301 (Wyo. 2008). Rule 32(d) provides:

> *Plea withdrawal.*—If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later

---

[4] As we pointed out in *Wiley*, there are other means by which a challenge to Wyo. Stat. Ann. § 7-13-402(b) may be made. *Wiley*, ¶ 14, 461 P.3d at 416 n.2; *see also Barela II*, ¶ 8, 375 P.3d at 786–87; *Pfeil*, ¶ 25, 336 P.3d at 1213–14.

time, a plea may be set aside only to correct manifest injustice.

*Nixon v. State*, 2002 WY 118, ¶ 9, 51 P.3d 851, 853 (Wyo. 2002) addressed the existence of a time limit on the withdrawal of guilty pleas after sentencing:

> Although [Rule 32(d)] does not, in and of itself, set a time limit for filing such a motion with the district court *after sentencing*, such a limit must exist as a logical corollary to the general rule that a case becomes final after judgment and sentence is entered and an appellate decision affirming the conviction has been made, or the time for taking an appeal expires without perfection of an appeal, or after the voluntary dismissal of such an appeal. *See Schuler v. State*, 771 P.2d 1217, 1220 (Wyo. 1989) (citing *Attletweedt v. State*, 684 P.2d 812 (Wyo. 1984); *State v. Duswalt*, 153 N.J. Super. 399, 379 A.2d 1278 (1977)), for the proposition that a case is no longer pending after a final judgment (in Wyoming, that is the judgment and sentence) has been entered in the trial court. **Unless a *specific*, *express* exception is created to this general rule by statute or court rule, a district court's jurisdiction to consider a motion to withdraw a plea—or any other motion not specifically provided for by statute or rule—ends when the case becomes final because of the expiration of the time for taking an appeal.** In sum, once a criminal case becomes final pursuant to the general rule, a trial court loses the power to act in that case unless it is expressly permitted to do so by statute or court rule.

*Nixon*, ¶ 9, 51 P.3d at 853–54 (emphasis added). A court only has jurisdiction over a motion to withdraw a guilty plea until the defendant's appeal is final or the time to seek such review has expired. *Id.*; *see also Sanchez v. State*, 2017 WY 70, ¶ 10, 397 P.3d 180, 183 (Wyo. 2017) ("Mr. Sanchez did not exercise his right to appeal his conviction and upon the expiration of his time to appeal, Mr. Sanchez's conviction became final. Mr. Sanchez's . . . post-sentence motion was therefore untimely, and the district court did not have jurisdiction to rule on Mr. Sanchez's motion."); *Neidlinger v. State*, 2010 WY 54, ¶ 10, 230 P.3d 306, 308–09 (Wyo. 2010) (Appellant's motion to withdraw his no contest plea was filed nearly two years after his conviction and sentence was affirmed by this Court. "Because the motion to withdraw the plea was untimely, the district court did not have jurisdiction to entertain the motion."); *Barela v. State*, 2002 WY 143, ¶ 9, 55 P.3d 11, 13 (Wyo. 2002) (*Barela I*) ("[A]ppellant filed his Motion to Withdraw Guilty Plea over five years after the entry of his plea and over five years after his sentence was

imposed. . . . Accordingly, the district court was without jurisdiction to consider the motion to withdraw appellant's guilty plea . . . .").

[¶21] Mr. Sides argues that his case is distinguishable from *Nixon* and the cases that followed it because none of those cases involved unconstitutional sentences. He contends that for the period in which his Washakie County sentences were illegal, his judgment could not have been final; and, because he filed his motion to withdraw his guilty plea prior to the correction of his sentence, it was timely filed and the district court had jurisdiction to consider it.

[¶22] An illegal sentence does not render all other aspects of a conviction open to dispute. W.R.Cr.P. 32 distinguishes between a judgment and a sentence. Under Rule 32(b), the court must enter a "judgment of conviction" after a defendant is convicted, pleads guilty or nolo contendere, or is found not guilty. Rule 32(c) requires that a sentence be imposed and entered "without unnecessary delay." As the United States Supreme Court said in *Montgomery v. Louisiana*, "Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions . . . . Extending parole eligibility to juvenile offenders . . . [does not] disturb the finality of state convictions." *Montgomery v. Louisiana*, 577 U.S. 190, 212, 136 S.Ct. 718, 736, 193 L.Ed.2d 599 (2016), *as revised* (Jan. 27, 2016).

[¶23] Here, Mr. Sides' judgment of conviction was entered in June 1995. The fact that *Miller* and its progeny rendered his sentence illegal did not alter the finality of the judgment against him. *See Montgomery*. The district court's jurisdiction to consider a motion to withdraw a plea ended when the case became final due to the expiration of the time for taking an appeal. *See Nixon*, ¶ 9, 51 P.3d at 853–54; W.R.A.P. 2.01(a) ("An appeal from a trial court to an appellate court shall be taken by filing the notice of appeal with the clerk of the trial court within 30 days from entry of the appealable order[.]"). The district court correctly ruled it did not have jurisdiction to address Mr. Sides' motion to withdraw his guilty plea. Because this Court has no greater jurisdiction than that of the district court in these matters, we, too, lack jurisdiction over the matter. *See Barela I*, ¶ 9, 55 P.3d at 13.

### III. *Does Mr. Sides' Carbon County sentence result in an unconstitutional de facto life sentence?*

[¶24] After Mr. Sides' 2015 resentencing hearing in Carbon County, the district court sentenced Mr. Sides to life with the possibility of parole after twenty-five years for attempted first degree murder and a concurrent three to five years for aggravated assault and battery, both consecutive to his Washakie County sentence. Mr. Sides contends that his Carbon County sentence creates an unconstitutional sentencing structure when combined with his Washakie County sentence. He argues that because the two sentences result in a minimum of fifty years of incarceration before parole eligibility, he has a de

facto life sentence, which is unconstitutional according to *Miller* and *Bear Cloud III*. Mr. Sides further contends that because the Carbon County District Court did not find him incorrigible, his sentence is unconstitutional.

## A.  Standard of Review

[¶25]  The question of whether Mr. Sides' sentence violates the constitution is a question of law subject to de novo review.  *Sam v. State*, 2019 WY 104, ¶ 9, 450 P.3d 217, 221 (Wyo. 2019) (*Sam II*); *see also Davis v. State*, 2018 WY 40, ¶ 62, 415 P.3d 666, 685 (Wyo. 2018) (*Davis I*) ("We review the legality of a sentence de novo, and we consider a sentence to be illegal when it violates the constitution or other laws.").

## B.  Does the *Bear Cloud III* aggregate sentence limit apply to Mr. Sides' consecutive Washakie County and Carbon County sentences?

[¶26]  In *Bear Cloud III*, we held that Eighth Amendment protections set forth in *Miller* applied to a "lengthy aggregate sentence for ***closely-related crimes*** whose practical effect is that the juvenile offender will spend his lifetime in prison . . . ."  *Bear Cloud III*, ¶ 32, 334 P.3d at 141 (emphasis added); *see also Sen III*, ¶ 18, 390 P.3d at 775; *Sam II*, ¶ 10, 450 P.3d at 221; *Wiley*, ¶ 14, 461 P.3d at 416 n.2.  An aggregate sentence of 45 years with possible release at the age of 61 is the "functional equivalent of life without parole." *Bear Cloud III*, ¶¶ 11, 33, 334 P.3d at 136, 142; *see also Sam v. State*, 2017 WY 98, ¶ 80, 401 P.3d 834, 860 (Wyo. 2017) (*Sam I*) (holding that Mr. Sam's sentence of a minimum 52 years with possible release at age 70 exceeded the "45/61 standard").  Absent a finding of irreparable corruption (sometimes referred to as "permanent incorrigibility") in a *Miller* hearing, such "lengthy aggregate" sentences are unconstitutional.  *Sam I*, ¶ 80, 401 P.3d at 860 (where the sentencing court determined "Mr. Sam is not one of the juvenile offenders whose crime reflects irreparable corruption," his "aggregated minimum sentence" violated *Bear Cloud III* and *Miller*).

[¶27]  Mr. Sides argues that his Carbon County sentence is unconstitutional because his total sentence—considering his Carbon County and Washakie County sentences together—violates the 45/61 threshold.  The total sentence results in a mandated parole ineligibility period of at least fifty years, exceeding the forty-five-year limit; and, Mr. Sides would be sixty-seven years old at the time of parole eligibility, exceeding the sixty-one-year-old threshold.  Mr. Sides contends that this sentencing structure is illegal because the district court did not make a "permanent incorrigibility" finding at his *Miller* hearing which is required to overcome the 45/61 limit.

[¶28] Our juvenile sentencing cases considering "lengthy aggregate sentences" have addressed aggregate sentences where a juvenile committed serious crimes that occurred at the same time or were directly associated with each other.  For example, in *Bear Cloud III*, Mr. Bear Cloud stole a gun, and later broke into a home along with two other young

men. During the burglary, while Mr. Bear Cloud was in another room, Mr. Sen shot and killed one of the home's residents with the stolen gun. *Bear Cloud III*, ¶ 3, 334 P.3d at 135. Mr. Bear Cloud pled guilty to charges of first-degree murder, aggravated burglary, and conspiracy to commit aggravated burglary and received aggregate sentences. *Id.* ¶ 1, 334 P.3d at 135. We extended *Miller* protection to Mr. Bear Cloud's sentences. *Bear Cloud III*, ¶¶ 32–37, 334 P.3d at 141–44; *see also Sen III*, ¶ 1, 390 P.3d at 770 (same facts as *Bear Cloud III*; Mr. Sen was convicted of felony murder, aggravated burglary, and conspiracy to commit aggravated burglary); *Davis I*, ¶ 1, 415 P.3d at 671 (Mr. Davis picked up a hitchhiker, robbed, and then murdered him; and was convicted of first degree murder, felony murder, and aggravated robbery); *Sam I*, ¶ 1, 401 P.3d at 840–41 (Mr. Sam shot repeatedly toward group of teens and then shot one teen in the head, and was convicted of first-degree murder, aggravated assault and battery, and ten counts of attempted aggravated assault and battery).

[¶29] An exception is *Wiley*, where Mr. Wiley committed crimes as a juvenile and attempted an escape six years later. *Wiley*, ¶¶ 3–4, 461 P.3d at 414. Mr. Wiley was fifteen years old when he murdered his stepmother and three brothers and then attempted to burn the house down. He pled guilty to three counts of first-degree murder, one count of second-degree murder, and one count of arson.[5] *Id.* Six years after he committed these crimes, when he was no longer a minor, Mr. Wiley pled guilty to a charge of escape and was sentenced to not less than three years nor more than six years running consecutively to his original sentence. *Id.* We refused to consider his argument that the consecutive sentence for his escape rendered his sentence unconstitutional because it exceeded the 45/61 threshold established in *Bear Cloud III*. We reasoned, "Mr. Wiley's escape did not occur while he was a juvenile, he was not sentenced for the escape while he was a juvenile, **nor was the escape sentence part of a 'lengthy aggregate sentence for closely-related crimes**.'" *Wiley*, ¶ 14, 461 P.3d at 416 n.2 (emphasis added) (quoting *Bear Cloud III*, ¶¶ 32–33, 334 P.3d at 141–42; *Sen III*, ¶ 18, 390 P.3d at 775).

[¶30] Here, it is difficult to see how the Carbon County crimes could be "closely-related" to the Washakie County crimes. Mr. Sides was seventeen years old when he committed both the Washakie County and Carbon County crimes, distinguishing this case from *Wiley*, where the defendant was no longer a minor when he attempted to escape. However, like Mr. Wiley, Mr. Sides' second set of crimes were separated by time and circumstances from the first. Mr. Sides' Washakie County crimes occurred on April 30, 1995. His Carbon County crimes occurred on December 29, 1995, while he was in

---

[5] He received an aggregate sentence for those crimes, making him eligible for parole after serving a minimum of forty-three years, when he would be fifty-eight years old. We held that this sentence was not the functional equivalent of life and, therefore, did not entitle Mr. Wiley to an individualized sentencing hearing under *Miller*. *Wiley*, ¶ 14, 461 P.3d at 416.

prison serving his Washakie County sentence. Those crimes involved different facts and different victims. *See supra* ¶¶ 4–9.

[¶31] Mr. Sides' Washakie County and Carbon County crimes were not closely related. Accordingly, his Washakie County and Carbon County sentences are not "lengthy aggregate sentence[s] for closely-related crimes." *Bear Cloud III*, ¶¶ 32–33, 334 P.3d at 141–42. His combined sentences do not implicate the 45/61-year aggregate sentencing protections of *Miller* and *Bear Cloud III* and are constitutional.

## IV.    *Did Mr. Sides receive ineffective assistance of counsel at his Carbon County resentencing hearing?*

[¶32] In his Carbon County case, Mr. Sides filed a motion asserting ineffective assistance of counsel pursuant to W.R.A.P. 21. Mr. Sides argues his attorney provided ineffective assistance in his Carbon County resentencing proceedings. After a hearing on the matter, the district court denied his motion. Mr. Sides appeals.

## A.    **Standard of Review**

[¶33] In the district court, Mr. Sides bore the burden of establishing that counsel's performance was deficient and that prejudice resulted. *Mellott v. State*, 2019 WY 23, ¶ 25, 435 P.3d 376, 385 (Wyo. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984); *Griggs v. State*, 2016 WY 16, ¶ 36, 367 P.3d 1108, 1124 (Wyo. 2016)).

[¶34] Orders denying Rule 21 motions involve mixed questions of law and fact. *Mellott*, ¶ 11, 435 P.3d at 381–82 (citing *Griggs*, ¶ 37, 367 P.3d at 1124). "The district court's 'conclusions of law, which include the question of whether counsel's conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct,' are reviewed *de novo*." *Id.* (quoting *Griggs*, ¶ 37, 367 P.3d at 1124). The district court's findings of fact will not be overturned unless they are clearly erroneous. *Id.* (quoting *Griggs*, ¶ 37, 367 P.3d at 1124).

> When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Hirsch* [*v. State*, 2006 WY 66], ¶ 15, 135 P.3d [586,] 593 [(Wyo. 2006)]. . . .
>
> The burden of proving that counsel was ineffective rests entirely on the appellant. *Martinez v. State*, 2006

11

WY 20, ¶ 23, 128 P.3d 652, 663 (Wyo. 2006). The appellant must also demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different. *Id.* A failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.* An ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice. *Id.*

*Dettloff* [*v. State*], 2007 WY 29, ¶¶ 18–19, 152 P.3d [376,] 382–83 [(Wyo. 2007)].

*Jenkins v. State*, 2011 WY 141, ¶ 6, 262 P.3d 552, 555 (Wyo. 2011); *see also Larkins v. State*, 2018 WY 122, ¶ 62, 429 P.3d 28, 43–44 (Wyo. 2018).

**B.     Prejudice**

[¶35]  Mr. Sides asserts the district court erred when it denied his Rule 21 motion. He contends his attorney provided ineffective assistance in his resentencing proceedings by (1) failing to investigate and challenge his disciplinary record, specifically his lack of Security Threat Group (STG) validation; and (2) waiving his presence during an in-chambers discussion.  Mr. Sides asserts that he was prejudiced by this deficient performance. *See Strickland*, 466 U.S. at 690–92, 104 S.Ct. at 2066–67; *Griggs*, ¶ 36, 367 P.3d at 1124.  After a judicious review of the record, including the resentencing and Rule 21 hearing transcripts, we conclude that the district court's finding that counsel's performance did not prejudice Mr. Sides was not clearly erroneous, and we will affirm on that basis.

### 1.  Failure to Investigate

[¶36]  During Mr. Sides' resentencing hearing, his disciplinary record was reviewed. One of his disciplinary records indicated that he was written up for STG, or gang-related, activity, to wit, he was in possession of a crib sheet used to decipher coded communications.  Mr. Sides testified that the indication on the write-up that he was "validated" as an STG member was incorrect.

[¶37]  Mr. Sides argues that because his attorney failed to investigate the STG issue, the sentencing court lacked information that contradicted the STG "validation" and showed Mr. Sides had cooperated with the DOC after the incident.  Mr. Sides argues he was prejudiced by this failure because the sentencing court relied upon his entire disciplinary record, which included this inaccuracy, when it considered his potential for rehabilitation.

12

[¶38] At the Rule 21 hearing, Mr. Sides' counsel testified that he was aware of Mr. Sides' STG write-up and Mr. Sides' appeal of that write-up, which was upheld by the warden. Counsel testified that he made a strategic decision not to challenge Mr. Sides' disciplinary record (including the STG write-up) because he did not want it to appear as if Mr. Sides was not taking responsibility for his actions. Counsel's strategic decision did not prejudice Mr. Sides.

[¶39] "Prejudice occurs when there is 'a reasonable probability that, absent counsel's deficient assistance, the outcome . . . would have been different.'" *Winters v. State*, 2019 WY 76, ¶ 11, 446 P.3d 191, 198 (Wyo. 2019) (quoting *Galbreath v. State*, 2015 WY 49, ¶ 5, 346 P.3d 16, 18 (Wyo. 2015)). Mr. Sides has not shown how the results of his sentencing would have been different if more information about his STG validation or his cooperation with the DOC had been presented to the sentencing court. The sentencing court was aware that Mr. Sides contested his STG "validation." In addition, the court was aware that Mr. Sides may have been relocated from Rawlins to Virginia due to safety concerns because he provided information to the DOC about inmate STG activities. Finally, the STG write-up was but one of thirty disciplinary citations received by Mr. Sides. Even with a more complete record on the events that led to the STG write-up, there is no "reasonable probability" that Mr. Sides' sentence would have been different.

### 2. Waiver of Presence at in-Chambers Conference

[¶40] When Mr. Sides was testifying about his STG write-up, he indicated his concern that confidential information might be divulged regarding the reason for his transfer to Virginia. The court immediately took a recess and reconvened in chambers. The following exchange took place:

> THE COURT: We are in session in chambers on the record. And you're welcome to have your client in here if you want him in here. That's up to you.
>
> [COUNSEL]: I will waive his presence, Your Honor.
>
> THE COURT: Okay. We had begun testimony about a November 14th disciplinary incident, and that led us to concerns, I am assuming, about why Mr. Sides has been transferred to Virginia. And there's a newspaper reporter in the room. So what are we worried about?
>
> [COUNSEL]: Well, I don't really know why Mr. Sides went to Virginia. I still don't know. I have indications that it has something to do with his informing staff at the prison about other inmates involved in security threats. That is his

13

report to me.  He says he got moved for personal safety and because he's doing this.  And it's the same thing he told the Court.  And that's all I'm aware of.

But there are obviously issues with that if that is true. And I don't mind any of the disciplinary write-ups -- up until this point, I don't mind any of that coming out there.  But if that is true, I think it puts him in a precarious position.

THE COURT: Has he got any disciplinary write-ups after November 14th?

[PROSECUTOR]: He has a couple more.

THE COURT: That occurred in Virginia or here?

[PROSECUTOR]: They were here, before he -- because he wasn't transferred, I don't believe, until August of 2015.

THE COURT: Do you intend to go into those recent disciplinary write-ups?

[PROSECUTOR]: Not with him.  I do intend to go into them with . . . the records custodian.

THE COURT: Okay.

[PROSECUTOR]: And I don't think that they are necessarily related.  There [sic] are, like, abuse of mail.

THE COURT: Okay.  Do you anticipate any testimony concerning November 14th that will potentially put Mr. Sides in danger if it is reported to the press?

[PROSECUTOR]: I am done with that line of testimony.

THE COURT: So the danger has passed, the danger to Mr. Sides from his testimony?

[PROSECUTOR]: Yes.

14

[¶41] Mr. Sides argues that counsel's waiver of his presence during this exchange amounted to ineffective assistance of counsel and prejudiced him because he was unable to provide context to the court. Given the exchange that occurred, we conclude that Mr. Sides was not prejudiced by his absence in chambers. Although his counsel indicated he had limited information concerning the move to Virginia, he provided a description of the events that comports with Mr. Sides' version. During the Rule 21 hearing, counsel testified that he knew from discussions with DOC officials that Mr. Sides had been moved for a variety of reasons, including his safety. Mr. Sides has not established what more he would have provided at the in-chambers discussion, or how that information would have impacted his sentencing. His absence was not prejudicial.

[¶42] There is no reasonable probability that the result of his resentencing would have been more favorable to Mr. Sides, absent the two incidents of alleged deficiencies. In fact, at resentencing, Mr. Sides received a more favorable sentence than he originally had.[6] The district court did not err when it concluded Mr. Sides did not establish ineffective assistance of counsel at his resentencing.

## *CONCLUSION*

[¶43] The Washakie County District Court lacked jurisdiction to consider questions regarding the application of parole eligibility statutes in Mr. Sides' Rule 35 motion to correct an illegal sentence and Mr. Sides' motion to withdraw his guilty plea. The Carbon County sentence, which is consecutive to his Washakie County sentence, did not create an unconstitutional de facto life sentence. Finally, Mr. Sides did not receive ineffective assistance of counsel at his Carbon County resentencing hearing. We affirm.

---

[6] His original Carbon County sentence was for life for attempted first-degree murder and a consecutive term of six to ten years for aggravated assault and battery. *Sides I*, 963 P.2d at 229. After resentencing, he will serve concurrent life and three- to five-year sentences for his Carbon County crimes.

15